No. 24-1355

# In the
# United States Court of Appeals
# for the Fourth Circuit

Walmart Real Estate Business Trust, *et al.*,

*Plaintiffs-Appellees*,

v.

Quarterfield Partners LLC, *et al.*,

*Defendants-Appellants*.

On Appeal from the
United States District Court
for the District of Maryland
No. 1:18-cv-03664-TJS
(Hon. Deborah L. Boardman and
Hon. Timothy J. Sullivan)

## Reply Brief of Appellants Quarterfield Partners LLC, *et al.*

John A. Bourgeois
Amy E. Askew
Louis P. Malick
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202
(410) 752-6030
jbourgeois@kg-law.com
aaskew@kg-law.com
lmalick@kg-law.com

*Counsel for Appellants
Quarterfield Partners LLC, et al.*

# Table of Contents

Table of Authorities ..................................................................................... ii

Summary of the Argument.......................................................................1

Argument...................................................................................................2

I.     The district court ignored key text to recast Section 27 as an unconditional option instead of the conditional option the parties actually agreed to. .............................................................................2

    A. The court should have enforced the parties' unambiguous agreement that the Option Term would not commence "until" Quarterfield sent two notices, but instead it crafted a new agreement for them....................3

    B. The plain language is what controls, not one party's subjective intent, mislabeled as purported "common sense."....................................6

    C. Walmart and Sam's misconstrue Maryland law on conditional options. ............................................................................................7

    D. Walmart and Sam's misstate Quarterfield's argument, Section 27, and other Lease provisions. ...................................................................10

II.    The district court erred in determining that Quarterfield breached by not yet issuing the Option Notices....................................................................11

III.   The district court erred in determining that Walmart and Sam's timely and validly exercised the options to purchase the properties. .......................13

    A. The court (and Walmart and Sam's) again ignored the text of Section 27. ............................................................................................14

    B. The court should not have considered contradictory extrinsic evidence. ...............................................................................................16

IV.   The district court further erred in affording Walmart and Sam's a windfall worth millions of dollars by not accounting for Quarterfield's lost time value of money during the more than five years that Walmart and Sam's have been permitted to retain the purchase prices. ......................18

V.    The district court should not have ordered that Walmart and Sam's are entitled to an award of attorneys' fees and costs. .........................................19

Conclusion .................................................................................................21

Certificate of Compliance ..........................................................................22

Certificate of Service .................................................................................23

i

# Table of Authorities

**Cases**

*Ayres v. Townsend*, 598 A.2d 470 (Md. 1991) ............................................................9

*Calomiris v. Woods*, 727 A.2d 358 (Md. 1999) ....................................................5, 16

*Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303 (Md. 2019) ......................5

*David A. Bramble, Inc. v. Thomas*, 914 A.2d 136 (Md. 2007) ........................... 8-9

*dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir. 2023) .........................7

*Ensor v. Wehland*, 221 A.2d 699 (Md. 1966) ...........................................................9

*Iglehart v. Jenifer*, 371 A.2d 453 (Md. Ct. Spec. App. 1977) .................................9

*Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 318 A.3d 1221
    (Md. 2024) ..........................................................................................3, 5, 7, 16

*Ocean Petroleum Co., Inc. v. Yanek*, 5 A.3d 683 (Md. 2010) .................................6

*Straley v. Osborne*, 278 A.2d 64 (Md. 1971) ................................................... 7-8, 9

*Westpark, Inc. v. Seaton Land Co.*, 171 A.2d 736 (Md. 1961) ...............................9

**Other Authorities**

Restatement of Property § 413, cmt. b (1944)...........................................................9

4892-5870-9228, v. 1

## Summary of the Argument

Walmart and Sam's commit many of the same errors in defending the district court's decisions as the district court committed in rendering them. They all ignore the most important language of Section 27 and prefer instead to hold the parties to something they did not actually agree to. The second and third sentences of Section 27 clearly modify and control over the first sentence, and provide that the Option Term "shall not commence" until Quarterfield sends two notices of its commencement. JA58, JA100. Walmart and Sam's agree in their Brief at 10 and 15 that this is what Section 27 actually provides—that the Option Term will be "postponed" or "suspend[ed]" if notice is not sent at the end of the ninth year—but they nevertheless contend that this "only affects the Option Term not the substantive grant of the Purchase Option altogether." Walmart's Br. at 15. This entirely misses the point of Section 27 and Quarterfield's argument.

Under the plain language of Section 27, which the court should have enforced, the Option Term "shall not commence until Lessor sends to Lessee two (2) thirty (30) day notices of the commencement of the Option." JA58, JA101. Instead, the court found that the Option commenced without notices having been sent, JA596-JA597; found that Quarterfield breached an implied duty of good faith and fair dealing by not sending notices, even though the contract expressly provided for the possibility of notices not being sent, JA588-JA589; and determined a date by which

1

notices were deemed to have been sent based on extrinsic evidence that contradicted Section 27's plain meaning, JA596. It then issued a damages ruling that in fact gives a multi-million dollar windfall to Walmart and Sam's and ruled that they were entitled to an award of attorneys' fees. JA674-JA675.

The contortions and distortions that Walmart and Sam's have had to perform in an attempt to defend the court's ruling are only reflective of why it should be reversed. This Court should in fact reverse, in every respect.

## Argument

I. **The district court ignored key text to recast Section 27 as an unconditional option instead of the conditional option the parties actually agreed to.**

Walmart and Sam's continue to ignore the same contractual language the district court ignored in reaching its erroneous decision. Walmart, Sam's, and the district court have focused their analysis exclusively on the first sentence of Section 27:

> From the end of the tenth (10th) year of this Lease until the end of the eleventh (11th) year of this Lease (the "Option Term"), Lessor hereby grants to Lessee an option to purchase the Premises from Lessor on the terms and conditions set forth herein (the "Option").

JA58, JA101. They act as if the contracts stop there and do not include the "terms and conditions" that the contracts in fact proceed to spell out. Their argument fails

2

to give any effect at all to the next two sentences, which delineate those terms and conditions and provide the essential meaning of Section 27:

> *Notwithstanding the foregoing*, <u>the Option Term shall not commence until</u> Lessor sends to Lessee two (2) thirty (30) day notices of the commencement of the Option (the "Option Notice"). <u>In the event Lessor fails to send such notice</u> at the end of the ninth (9th) year of this Lease, <u>then the Option Term shall be moved</u> such that it is for a one year period commencing thirty (30) days after the Second Option Notice has been received by Lessee.

JA58, JA101 (all emphasis added).

This passage modifies and controls over the preceding sentence, *see Lithko Contracting, LLC v. XL Ins. Am., Inc.*, 318 A.3d 1221, 1233 (Md. 2024), makes any option the preceding sentence granted conditional, and establishes what would happen in the event notice was not given in the ninth year. But, instead of enforcing this provision, the district court ignored it. Instead of giving effect to the option mechanism the parties actually agreed to, the court stepped in and imposed its own extra-contractual solution.

**A. The court should have enforced the parties' unambiguous agreement that the Option Term would not commence "until" Quarterfield sent two notices, but instead it crafted a new agreement for them.**

Section 27 clearly provided that the Option Term would not be triggered until the "Lessor"—Quarterfield—sent two notices of its commencement, thus reserving in Quarterfield discretion as to whether and when they would be sent. Although

Walmart and Sam's claim the language, which they drafted, JA236-JA238, JA550, was a reminder for their sole benefit, drafted on the assumption that they would either forget about the option or that a single notice would be lost in the shuffle at their large corporate offices, Walmart's Br. at 10, 15-17, *see also* JA185, that is not its effect. Even Walmart and Sam's agree that the "plain language" of the "Notwithstanding the foregoing" passage means that it "postpones" or "suspends commencement of the Option Term." Walmart's Br. at 15. The provision that the Option Term "shall be moved" in the event notice was not given at the end of the ninth year of the Lease is conclusive proof that the parties contemplated and provided for the possibility of Quarterfield not sending the notices in the ninth year.

Despite those clear provisions of the contract spelling out the notice procedure, and stating that the Option Term "shall not commence" until it was performed—a proposition with which Walmart and Sam's agree, Walmart's Br. at 15—the court erroneously decided to fashion an entirely new purported remedy for the parties, creating additional error in the process. The court deemed the two Option Notices to have been sent as of a certain time, even though they were not sent, and overrode Quarterfield's election not to send them. The court did so in the face of the contractual command that the Option Term "shall not commence until" both notices were sent and the contract's clear provision for what would happen in the event the notices were delayed. JA58, JA101. The court thus rendered the "Notwithstanding

the foregoing" language mere surplusage, rewrote the agreement the parties had reached, and ruled based on a counter-factual narrative that it created.

This violated Maryland law in numerous ways, as explained in Quarterfield's opening Brief. For example, Maryland law requires that courts give effect to each clause of a contract, "to avoid 'an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.'" *Credible Behav. Health, Inc. v. Johnson*, 220 A.3d 303, 312 (Md. 2019) (citation omitted). Maryland law is equally clear that courts are not at liberty to rewrite contracts, and that their proper role is, instead, to enforce the bargain the parties actually agreed to. *Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999). "As a general rule, parties are free to contract as they wish," and "[i]t is a fundamental principle of contract law that it is improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships." *Lithko Contracting*, 318 A.3d at 1231-32 (citations and internal quotations omitted). The court's ruling acknowledged these principles, and other basic points of Maryland contract law, JA579-JA581, as do Walmart and Sam's, but the court nevertheless failed to follow them. Although the court said it was enforcing the plain language of the Leases, JA584-JA587, that is not what the court did. The court's incorrect application of Maryland contract law is legal error that demands reversal.

4892-5870-9228, v. 1

**B.    The plain language is what controls, not one party's subjective intent, mislabeled as purported "common sense."**

Walmart and Sam's would prefer not to examine the court's actual application of legal principles or the effect of the court's decision, relying instead on their misguided view of "common sense." Labeling their own preferred result as "common sense" is just an attempt to unjustly elevate that preference or even create a false vehicle for the Court to consider their own subjective intent or belief as to what Section 27 meant, which courts are not permitted to consider in interpreting an unambiguous contract. *E.g.*, *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010). Walmart's and Sam's' subjective and unreasonable interpretation that "the Option Notice requirement exists for the benefit of Walmart so the Option Term would not pass without it knowing," Walmart's Br. at 17, has little, if anything, to do with common sense. If this view were correct, which it is not, it would make the "Notwithstanding the foregoing" passage have even less meaning in light of the court's decision to further protect Walmart and Sam's by permitting them to take advantage of the option without notices being sent at all. Walmart and Sam's do not seriously attempt to defend this result as fair or reasonable—which it is not—but at the same time they suggest, without any basis other than that it would benefit them less, that a contrary result would have been unfair or unreasonable. Walmart's Br. at 18. There is nothing unfair or unreasonable about holding parties to the bargains they make.

4892-5870-9228, v. 1

Walmart and Sam's do not even cite, much less grapple with, the Supreme Court of Maryland's recent decision explaining that the word "notwithstanding" provides the clause in which it appears "with a place of priority over any competing provision." *Lithko Contracting*, 318 A.3d at 1233. This decision was cited for this proposition in Quarterfield's opening Brief at 15 and 17, is directly on point, and confirms the plain meaning of the word "notwithstanding," which should already have been plain to the parties and the district court. But, instead of giving the "Notwithstanding the foregoing" passage "priority" over the competing passage in the sentence that preceded it, regarding the same subject, *id.*, the court instead rendered it nugatory surplusage, violating the other canons of construction addressed above. This is the opposite of what Maryland law requires. A court cannot act under the guise of misconceived "common sense" or something else to override the plain language of an unambiguous agreement.[1] The plain language must control.

## C. Walmart and Sam's misconstrue Maryland law on conditional options.

Walmart's and Sams's' reading of *Straley v. Osborne*, 278 A.2d 64 (Md. 1971), is not accurate, nor is their interpretation of Maryland's law of conditional options generally.

---

[1] This Court's decision in *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 144 (4th Cir. 2023), which Walmart and Sam's cite for the importance of common sense, dealt not with the construction of a written agreement but with the very different situation of interpretation of an agreement that "was never written down."

The Maryland high court's discussion in *Straley* was not limited to rights of first refusal, and indeed included rights of first refusal as just one of a list of types of options that, unlike "true" options, are conditional. Contrary to Walmart's and Sam's' argument, Walmart's Br. at 19, there was nothing "exclusive" about the court's discussion and the court did not distinguish between different types of conditional options. The *Straley* court said:

> On the other hand, if there exists what has been termed a right of first refusal, a first option, conditional option, or first privilege of purchase, Straley's right is conditional. Professor Corbin describes these rights as 'closely related (to options) with respect to the purposes for which they are made and yet are very dissimilar in the legal relations of the parties who make them.'

278 A.2d at 68-69 (citations omitted) (emphasis added). The court examined the option at issue there, which was titled a "first option" and was conditioned on the owner's decision to sell, and found that, "irrespective of the problems which are created by combining the word 'option' [with] conditional terms such as 'first,' a reading of the instrument as a whole leads to the conclusion that Straley held something other than a true option." *Id.* at 69. The court's discussion was obviously about the genus of conditional options as a whole. It was not limited to any particular species of conditional option and did not draw any distinctions between them.

In *David A. Bramble, Inc. v. Thomas*, 914 A.2d 136, 143 (Md. 2007), the court drew similar distinctions between rights of first refusal—which it called a "type of

option"—and what it termed "traditional options," which are what the *Straley* court termed "true options"—a term the *Bramble* court also used in quoting with approval from the Restatement of Property § 413, cmt. b (1944). As the court modified that comment in its quotation:

> [preemptive] rights of the [holder] are contingent upon the desire of the owner to sell. [Unlike a true option] the [holder of a right of first refusal] has no unqualified power to compel a sale to him or to a third person.... *These provisions are, consequently, analogous to options upon a condition precedent, and subject to many of the same rules* [as an option agreement].

914 A.2d at 143-44 (emphasis in *Bramble*). The conditional option in this case is not a right of first refusal in the sense articulated in *Bramble*, in that it is not "triggered" by "receipt of an offer from a third-party purchaser to buy the subject property." 914 A.2d at 143. But, the *Bramble* court did not otherwise distinguish between rights of first refusal and other types of conditional options, including with respect to the rights conveyed. Nor did the courts in *Ayres v. Townsend*, 598 A.2d 470, 474 (Md. 1991); *Westpark, Inc. v. Seaton Land Co.*, 171 A.2d 736, 742-43 (Md. 1961); or *Iglehart v. Jenifer*, 371 A.2d 453, n.1 (Md. Ct. Spec. App. 1977).

Walmart's and Sam's' argument does not get around the essential point of law stated in *Straley* and in *Ensor v. Wehland*, 221 A.2d 699, 700, 703 (Md. 1966), that conditional options are valid contracts in Maryland, which are not illusory, even though dependent on the property owner's willingness to sell.

**D.** **Walmart and Sam's misstate Quarterfield's argument, Section 27, and other Lease provisions.**

In attempting to overcome the multiple fatal flaws in the court's construction of Section 27, Walmart and Sam's misconstrue Quarterfield's argument and misstate Lease provisions.

The fact that notices were not sent during the ninth year of the Lease and have not yet been sent does not mean that the options have been, in Walmart's and Sam's' words, "revoke[d]," "forfeit[ed]," or "nullif[ied]." Walmart's Br. at 18. To the contrary, it means the Option Terms have not yet commenced.

Contrary to Walmart's and Sam's' claim that Section 27 provided a "specific formula for the price of the property eleven years down the road," Walmart's Br. at 23, Section 27 actually provided a formula based on "the annual rent at the time of the Option Notice" using what it said was an "**<u>example</u>**" of the "eleventh (11th) year of the Initial Term of the Lease." JA58, JA101 (emphasis added).

Walmart and Sam's assertion that Quarterfield could "demand new terms *ab initio* at its unilateral election by withholding notice" or "negotiate the same sale on entirely different pricing terms" by not sending notice in the ninth year of the Leases, Walmart's Br. at 23, is simply incorrect and directly contradicts Section 27 and other Lease provisions. Again, Section 27 provides a formula for determining the purchase price based on "the annual rent at the time of the Option Notice," JA58, JA101, whatever that may be when the Option Notice is sent. Annual rents are established

in Section 3(b) of the Leases for the initial 20-year term and for each of the 16 five-year extension terms. JA45, JA87-JA88. Any of these annual rents could be used in the purchase price formula in place of the "example" of the eleventh year, and saying otherwise renders meaningless even more of the language of Section 27 and all of the provisions regarding the 16 extension periods.

The contortions Walmart and Sam's have had to go through and the misstatements and misconstructions of Quarterfield's argument and the Leases that they have had to put forth in an effort to defend the judgment below are only further symptoms of the weakness of the court's reasoning and the errors in its decision. This Court should reverse.

## II. The district court erred in determining that Quarterfield breached by not yet issuing the Option Notices.

The court further erred in finding that Quarterfield breached some duty under the Leases by not giving notice. Walmart and Sam's and the district court all have been focused on the notion that there was a "consequence" for "failing" to send notice, and that, accordingly, Quarterfield must have breached by not doing so. But all three of them miss the point of this consequence and continue to ignore important contractual language in the process.

There was, indeed, a contractual consequence for not giving notice at the end of the ninth year of the Lease: "then the Option Term shall be moved such that it is for a one year period commencing thirty (30) days after the Second Option Notice

has been received by Lessee." JA58, JA101. The court acknowledged that this was so. JA588 ("The option clause language does, however, indicate that there would be consequences (i.e., the Option Term would be moved) 'in the event [Quarterfield] fails' to send the notices at the end of the ninth year of the lease."). But, the court proceeded to wholly ignore this agreed upon consequence in ruling that Walmart and Sam's were permitted to exercise the option at a certain time without notices having been sent at all. *E.g.*, JA596, JA597.

The contractual provision for what would happen in the event notices were not sent during the ninth year of the Lease is a clear contemplation of the possibility that notices would not be sent at that time. This forecloses any reasonable conclusion that there was some "obligation" to send notice at that time and that not doing so was a breach of duty by Quarterfield. The court's decisions to the contrary, including the decision that Quarterfield breached the implied duty of good faith and fair dealing, JA588-JA589—and, notably, not the text of the agreements—were legally incorrect. These decisions were compelled by the court's erroneous construction of Section 27 and oriented toward the court's ultimate decision to grant specific performance for Walmart and Sam's. Walmart and Sam's agree that "the covenant of good faith and fair dealing cannot override express terms of the contract and does not impose affirmative duties on a party beyond those expressed in the contract," Walmart's Br. at 27, but ignore that the "affirmative duty" they say was breached can be found only

in a misconstruction of the contract that ignores the contract's key terms. The district court did not even find that Quarterfield "breached" by not sending notice during the ninth year of the Lease, in reference to the first sentence of Section 27. Instead of grounding its decision in the contract, it found that Quarterfield "had a contractual duty to provide notice" at some indeterminate time, "which it failed to do." JA589.

Quarterfield has not breached anything by not yet sending notices of the option's commencement, and this Court should reverse.

## III. The district court erred in determining that Walmart and Sam's timely and validly exercised the options to purchase the properties.

The court's erroneous construction of Section 27 forced it to reach another issue, that was present only because of its erroneous construction, and which the court also decided erroneously. The flexibility that the contracting parties gave themselves in the "Notwithstanding the foregoing" passage and the formula for determining a purchase price meant that the option period was not actually tied to a fixed "year" of the Lease. That passage of Section 27 specified that the one-year Option Term would commence only 30 days after receipt of the second Option Notice. JA58, JA101. But, having ignored this and erroneously determined that there was an unconditional option "[f]rom the end of the tenth (10th) year of this Lease until the end of the eleventh (11th) year of this Lease," JA58, JA100, the court created the need to determine when, under its erroneous construct, notice should

have been sent and whether Walmart and Sam's timely acted within a year after that date to exercise the options. *See* JA590, JA596.

## A. The court (and Walmart and Sam's) again ignored the text of Section 27.

It was unnecessary for the court to determine this question in the first place, because of the provision in Section 27 that the Option Term would be moved if notice was not sent in the ninth year of the Lease, but the court further erred in determining when the pertinent year of the Lease occurred. If the court was to make this determination at all, it should have made it based on the text of Section 27 and should not have resorted to extrinsic evidence that contradicted Section 27, which it ultimately did.

Section 27 grants a conditional option "[f]rom the end of the tenth (10th) year of this Lease until the end of the eleventh (11th) year of this Lease" and calculates the purchase price based on the "eleventh (11th) year of the Initial Term of the Lease." JA58, JA100-JA101. As explained above, the calculation of a purchase price based on that year is only an "example," as Section 27 says. JA58, JA100-JA101. But, the language used should have ended the inquiry on this question. Section 27 itself contains this express reference to the "eleventh (11th) year of the Initial Term of the Lease," and the "Initial Term" of the Lease is defined in Section 2(c) of the Lease as being "for a period commencing on the Effective Date." JA44, JA87. The Effective Date, therefore, should have been used as the starting point for counting years "of

14

this Lease." The "Rent Commencement Date," which Walmart, Sam's, and the district court erroneously believed to be the starting point, is only used in the definition of the "Initial Term" to specify when the Initial Term ends—"twenty (20) years after the Rent Commencement Date"—not when it begins. JA44, JA87. Only by using this erroneous starting point could the court determine that Walmart's and Sam's' attempts to exercise the options (without prior notice from Quarterfield) were timely.

Walmart's and Sam's' own argument regarding the "example" in Section 27 forecloses the result they obtained. They argue the "example" provision is actually a "specific formula for the price of the property." Walmart's Br. at 23. This at least must mean that the provision should have been given weight and not ignored in favor of contrary extrinsic evidence. They further argue that the parties agreed to that "specific formula" "at the inception of the Lease" to be used to calculate the purchase price, they say, "eleven years down the road." Walmart's Br. at 23. This can only mean eleven years after the Effective Date. Walmart and Sam's ignore that they actually attempted to exercise the options more than thirteen years "down the road," in September 2018 and January 2019, which the court erroneously determined was timely. Thus, even under Walmart's and Sam's' own construction of the Leases, their attempts to exercise the options were untimely.

**B.     The court should not have considered contradictory extrinsic evidence.**

If it was going to decide this issue, the court should have rested its decision on the plain text of Section 27 alone, which was unambiguous. *E.g.*, *Lithko Contracting*, 318 A.3d at 1230-31. Instead, it relied on pre- and post-Lease extrinsic evidence that contradicted Section 27—that is, the terms the parties actually agreed to—and which, therefore, was inadmissible. *Calomiris*, 727 A.2d at 361-62, 366-67. This was additional error.

Walmart and Sam's take the position that the extrinsic evidence was "consistent" in referring to the Rent Commencement Date, and also that the extrinsic evidence did not vary or contradict the "Option Term." Walmart's Br. at 31. This latter claim is especially extraordinary given that the extrinsic evidence—in the form of unsigned letters of intent and other documents that, by their terms, were not meant to "supersede, amend, nor replace any covenants of the Lease," JA128, JA135—described a purchase option that was different from Section 27 in nearly every respect, as outlined in Quarterfield's opening Brief at 34-41. In fact, the only conclusion to be fairly drawn from these documents is that they envisioned an option that would have been very different from what the parties actually agreed to in Section 27. They were legally inadmissible under *Calomiris*, 727 A.2d at 361-62, 366-67, and they had no persuasive value in any event.

4892-5870-9228, v. 1

On top of the contradictory pre- and post-contract negotiations and other documents the court relied upon, the unfair extrapolation from the deposition testimony of Quarterfield's designee regarding the perceived greater profitability of leasing the properties is only further proof that the court decided a question that proper application of the Leases would not have required it to decide. By sending notice later than in the ninth year of the Lease, as Section 27 expressly provides for, Quarterfield would have collected greater rent regardless of any study periods that preceded the Rent Commencement Date. Again, this question was only raised by the court's erroneous decision to deem the Option Notices to have been sent as of a certain time. If the court had enforced Section 27 as written, delaying the Option Term until the Notices were sent, this would not have been an issue.

In the close of their argument on this point Walmart and Sam's again show the weakness of the court's reasoning and the decision's vulnerability to reversal. They suggest that any error in the court's decision is "less critical" in light of Quarterfield's "breach" (by not sending notice) because "Quarterfield's breach suspended the commencement of the Option Term." Walmart's Br. at 31; *see also id.* at 11. Whether this was a rhetorical slip or not, the understanding that not sending notice should have delayed the commencement of the Option Term shows that even Walmart and Sam's are not convinced of the correctness of the court's errant path in reaching this issue or the soundness of its ultimate decision.

17

The court indeed reached the wrong result, by way of a series of wrong turns, and all of its decisions regarding the interpretation or application of Section 27 should be reversed.

**IV.  The district court further erred in affording Walmart and Sam's a windfall worth millions of dollars by not accounting for Quarterfield's lost time value of money during the more than five years that Walmart and Sam's have been permitted to retain the purchase prices.**

In claiming that the court's damages ruling actually put the parties in their proper places without affording them a windfall, Walmart's Br. at 11-12, 34, Walmart and Sam's again ignore a crucial fact: regardless of whether they stand ready to pay for the properties, they have not paid for the properties. Walmart and Sam's are still holding the purchase prices—a combined $16,867,216.25—and have continued to enjoy the benefits of that money for the more than five years since the time that, according to them and the district court, closings on the conveyances should have occurred, in the spring of 2019. The court's ruling gives them the added benefit of occupying the properties rent-free since the time closings were deemed to have occurred in 2019—that is, for the last five years and counting.

Walmart and Sam's have not paid one penny of the more than $16 Million in purchase prices to Quarterfield or to the registry of the district court. Walmart and Sam's have enjoyed the use of that money—and they have deprived Quarterfield of the use of that money—for more than five years. By way of example, interest on the purchase prices between the deemed closing dates in 2019 and just June of 2024, run

at Maryland's pre-judgment interest rate of 6% per annum, would amount to $5,361,266.57, which continues to grow each day. Subtracting out the damages the district court awarded to Walmart and Sam's, JA674-JA675, Walmart and Sam's will have retained a net benefit of $3,207,820.09 as of June 2024, while Quarterfield will have sustained a net lost benefit in that same amount. The district court's ruling does not account for this imbalance and, accordingly, puts Walmart and Sam's in a far better position (and Quarterfield in a far worse position) than if the contracts actually had been performed in the way Walmart, Sam's, and the court say they should have been performed.

Reversal of the court's rulings regarding the construction of Section 27 will moot this issue. But, in the event this Court does not reverse the "liability" determinations, it should exercise its discretion to reverse the "damages" determination as plain error and avoid the injustice of granting a multi-million dollar windfall to Walmart and Sam's and a concomitant further multi-million dollar loss to Quarterfield.

## V. The district court should not have ordered that Walmart and Sam's are entitled to an award of attorneys' fees and costs.

Walmart and Sam's still ignore that the whole point of their lawsuit was to force Quarterfield to sign the Purchase Agreements and convey the properties. Their assertion that they "did not seek any relief pursuant to the Purchase Agreements" in their amended complaint, Walmart's Br. at 36, is simply incorrect.

To the contrary, Walmart and Sam's requested as relief on Count I, their demand for a declaratory judgment, an Order declaring the validity of Section 27, "thereby allowing Plaintiffs to exercise their Options to purchase the Walmart and Sam's REBT Parcel, and that Plaintiffs so executed their options to purchase the Walmart and Sam's REBT Properties such that they possess the right to purchase Plaintiffs' Parcels at the defined prices pursuant to the Purchase Agreements accompanying each of the Leases." JA24 (emphasis added). They requested as relief on Count II, their demand for specific performance, an order "(i) directing Defendants to convey the Walmart and Sam's REBT Parcels to Walmart and Sam's REBT, respectfully [sic], pursuant to the terms of the Purchase Agreements." JA25 (emphasis added).

This case was about nothing if not the Purchase Agreements, which provide for each party to bear its own attorneys' fees. JA78, JA121. Accordingly, attorneys' fees should not have been awarded. Like the court's damages ruling, its decision to award fees will be mooted by reversal on the issues regarding the interpretation or application of Section 27, but the fee decision should be reversed in any event.

20

**Conclusion**

The Court should reverse in all respects and remand for the entry of judgment in Quarterfield's favor.[2]

Respectfully submitted:

*/s/ John A. Bourgeois*
John A. Bourgeois
Amy E. Askew
Louis P. Malick
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202
(410) 752-6030
jbourgeois@kg-law.com
aaskew@kg-law.com
lmalick@kg-law.com

*Counsel for Appellants*
*Quarterfield Partners LLC, et al.*

---

[2] Walmart and Sam's voluntarily dismissed their cross-appeal on August 27, 2024. *See* Doc. 23 in Appeal No. 24-1407.

4892-5870-9228, v. 1

## Certificate of Compliance

I hereby certify that the foregoing brief complies with: (1) the 6,500 word type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii), in that it contains 5,139 words, excluding the parts exempted by Fed. R. App. P. 32(f); and (2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportional typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ John A. Bourgeois*
John A. Bourgeois

*Counsel for Appellants*

4892-5870-9228, v. 1

**Certificate of Service**

I hereby certify that, on October 3, 2024, I filed this brief using the Court's CM/ECF system, which will cause copies to be served on all counsel of record.

*/s/ John A. Bourgeois*
John A. Bourgeois

*Counsel for Appellants*

4892-5870-9228, v. 1